IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
JUN 1 3 2017
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

John Westbrook, III, )
    Plaintiff, )
)
v. ) 1:16cv480 (LMB/IDD)
)
John Koch, et al., )
    Defendants. )

MEMORANDUM OPINION

John Westbrook, III, a Virginia inmate proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights when they interviewed him in connection with allegations that he sexually assaulted another inmate. The matter is now before the Court on defendants' Motion to Dismiss the amended complaint for failure to state a claim upon which relief can be granted. [Dkt. No. 19] Defendants supplied plaintiff with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(J), and after receiving an extension of time plaintiff filed a Motion to Amend the complaint in lieu of submitting a substantive response to defendants' arguments. [Dkt. No. 28] Plaintiff also made discovery requests [Dkt. No. 29], and defendants filed a protective order seeking a stay of discovery until the Motion to Dismiss was adjudicated. [Dkt. No. 30] For the following reasons, defendants' Motion to Dismiss will be granted, plaintiff's Motion to Amend will be denied, and the motions for discovery and a protective order will be denied, as moot.

I. Defendants' Motion to Dismiss

A. Plaintiff's Allegations

In his amended complaint, plaintiff alleges that defendant K. Chalmers, an institutional

1

investigator at Deerfield Correctional Center, brought plaintiff into an interview room on September 12, 2014 and read plaintiff his Miranda rights. Am. Compl., ¶ 6.[1] Chalmers told plaintiff that he was investigating allegations that another inmate had been sexually assaulted. Plaintiff denied the allegations, accused the other inmate of making them up, and declined to make any further comment. Am. Compl. ¶¶ 7-9. Chalmers charged plaintiff with the disciplinary infraction of making forcible sexual advances on another offender and wrote that plaintiff admitted the offense, but plaintiff claims that the reference to his admission was a "lie." Am. Compl. ¶ 10.

The second defendant, Lawanda Long, a regional Prison Rape Elimination Act ("PREA") investigator for the Virginia Department of Corrections ("VDOC"), is alleged to have signed off on the institutional disciplinary report and therefore "sign[ed] off on a false report." Am. Compl. ¶¶ 5, 19.

Plaintiff was convicted of the charged infraction, and was penalized with a loss of good-time credit and 30 days' placement in a special housing unit. Am. Compl. ¶ 21.

The amended complaint further alleges that about a month later, on October 9, 2014, John Koch, a senior special agent for VDOC, again brought plaintiff into an interview view and read him the Miranda rights. Plaintiff requested an attorney. Am. Compl. ¶ 13. Koch told plaintiff he didn't need an attorney, but that was a "lie" designed to "get [plaintiff] to make a false statement" and incriminate himself. Am. Compl. § 14. Plaintiff made a statement under duress and did not admit to the charge, but Koch nonetheless issued a report stating that plaintiff confessed to forcibly "making another inmate give [him] oral sex." Am. Compl. ¶¶ 15, 17.

---

[1]After plaintiff filed the initial complaint in this action, an Order was entered explaining its deficiencies and allowing plaintiff an opportunity to submit a particularized and amended complaint. [Dkt. No. 3] The amended complaint plaintiff filed in response to that order [Dkt. No. 5] is the operative complaint in the lawsuit.

Plaintiff claims the charge was a "lie," and complains that it was used in civil commitment proceedings in which plaintiff was given a Sexually Violent Predator Evaluation. Am. Compl. ¶¶ 17.

As relief plaintiff seeks monetary damages and injunctive relief in the form of an order that defendants be dismissed from their positions.

B. Plaintiff's Claims

Based upon the foregoing factual allegations, plaintiff makes the following claims:

(a) Chalmers violated plaintiff's Fifth and Sixth Amendment rights by failing to conduct a fair and unbiased interview.

(b) Long violated plaintiff's Fifth and Sixth Amendment rights because she oversaw the institutional disciplinary proceedings which were based on Chalmers' false report.

(c) Koch violated plaintiff's Fifth and Sixth Amendment rights by failing to provide plaintiff with an attorney after plaintiff requested the assistance of counsel, and because he used threats to coerce plaintiff into giving a false statement, and also violated plaintiff's right to due process by writing a "false charge" against him.

C. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether a complaint states a cause of action upon which relief can be granted. Although the alleged facts are presumed true, to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id.; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

3

suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 129 S. Ct. at 1949-1950, nor should a court accept a plaintiff's "unwarranted deductions," "rootless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations." Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996).

D. Analysis

1. Fifth Amendment Claims

Plaintiff's assertions that defendants violated his rights under the Fifth and Sixth Amendments by subjecting him to a coercive interrogation, "lying" about his statements, and denying his request for counsel state no claim for which relief can be granted because the actions plaintiff challenges were not taken as part of a criminal proceeding. In relevant part, the Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...." Similarly, the Sixth Amendment dictates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." To protect these rights, the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966) "adopted prophylactic procedural rules that must be followed during custodial interrogations." Burket v. Angelone, 208 F.3d 172, 196 (4th Cir. 2000). The well-known Miranda safeguards are "not themselves rights protected by the Constitution, but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." Michigan v. Tucker, 417 U.S. 433, 444 (1974). Thus, in Chavez v. Martinez, 538 U.S. 760 (2003), a plurality of the Supreme Court held that Fifth Amendment Miranda violations can occur only in the context of criminal prosecutions, and that as a result coercive or uncounseled questioning by law enforcement officers does not amount to a freestanding constitutional violation needed to support a § 1983

4

claim. The plaintiff in Chavez allegedly was coercively interrogated but was never prosecuted based on the interrogation, and the Court concluded that under those circumstances his § 1983 suit failed to state claim for violation of his rights under the Fifth Amendment. Id. at 763-64. The Court reasoned that, although "[s]tatements compelled by police interrogations ... may not be used against a defendant at trial, ... it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs," id. at 767, and the Court concluded that the defendant officer whose interrogation allegedly had violated the plaintiff's Fifth and Fourteenth Amendment rights was entitled to qualified immunity. Id. at 769. Accord, Burrell v. Virginia, 395 F.3d 508, 513 (4th Cir. 2005) (concluding pursuant to Chavez that a § 1983 complaint failed to state a claim where plaintiff did "not allege any *trial* action that violated his Fifth Amendment rights"); Bowman v. Mann, 2016 WL 6093489 (E.D. Va. Oct. 18, 2016) (dismissing Fifth Amendment claim where a § 1983 plaintiff failed to allege that statements produced during allegedly unconstitutional questioning were ever used against him in a trial); Newkirk v. Lerner, 2014 WL 587174, at *5 (E.D. Va. Feb. 14, 2014) (because the Fifth Amendment privilege against self-incrimination is a trial right, "*a constitutional violation occurs only at trial*") (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) (emphasis original)).

Here, plaintiff's assertion that the defendants violated his Fifth Amendment rights by subjecting him to a coercive custodial investigation states no claim of a constitutional violation because he does not allege that he was ever subjected to a criminal prosecution at which the statements were utilized against him.[2]

---

[2] If plaintiff's claim that he was deprived of the right to counsel is interpreted as encompassing his Fifth Amendment right to counsel in addition to his distinct right to counsel guaranteed by the Sixth Amendment, the reasoning of Chavez applies and the claims are subject to dismissal. See Olaniyi v. District of Columbia, 416 F. Supp. 2d 43, 63-64 (D.D.C. 2006) ("Chavez made explicit that the Fifth Amendment's protection against self-incrimination, which includes the right to have an attorney present during a custodial interrogation, does not attach until the statements compelled in the absence of an attorney are *used* at some point in the

5

### 2. Sixth Amendment Claims

Similarly, the Sixth Amendment right to counsel only applies in the context of a criminal prosecution, and does not attach until a criminal prosecution is commenced. Kirby v. Illinois, 406 U.S. 682, 688 (1972); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013). "Commencement" in this context refers to "the initiation of adversary judicial criminal proceedings by way of formal charge, preliminary hearing, indictment, information or arraignment." United States v. Goeveia, 467 U.S. 180, 188 (1984). Clearly, there are no allegations in this case that any such proceedings occurred. To the extent that plaintiff would argue that the Sixth Amendment is implicated by the use of allegedly coerced statements in a prison disciplinary proceeding, his position would be incorrect, as the Supreme Court has made it clear that "[p]rison disciplinary proceedings are not criminal proceedings." Baxter v. Palmigiano, 425 U.S. 308, 316 (1976); see also, Brown v. Braxton, 373 F.3d 501, 504-05 (4th Cir. 2004) (inmates have no right to counsel at institutional disciplinary proceedings). Similarly, to the extent that plaintiff might contend that his Fifth and Sixth amendment rights were violated when his allegedly coerced and uncounseled statements were used during his Sexually Violent Predator Evaluation, such a proceeding likewise is not a criminal prosecution, and the constitutional rights plaintiff invokes here consequently did not attach.

### C. Due Process Claims

Plaintiff's allegations that his disciplinary charge and the underlying disciplinary reports were false are properly analyzed as a due process violation, and in deference to his pro se status they will be so construed here. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although it is well established that prisoners cannot be subjected

---

proceeding.") (emphasis original).

to arbitrary discipline by prison officials, Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966), prisoners' due process rights necessarily must be balanced against the interests of institutional security. Wolff v. McDonnell, 418 U.S. 539 (1974). Under this reasoning, an inmate at a disciplinary hearing is not entitled to the full panoply of rights accorded to a defendant at a criminal trial. Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Even assuming that the outcome of plaintiff's disciplinary proceeding implicated a protected liberty interest, plaintiff "cannot proceed ... with his § 1983 claims for damages or injunctive relief related to his disciplinary conviction while that conviction stands in effect." Mukuria v. Mullins, 2015 WL 6958343, at *2 (W.D. Va. Nov. 10, 2015). That conclusion derives from the now well-established principle that "[a] state prisoner's claim for damages related to his criminal conviction is not cognizable under § 1983 where success of the action would implicitly question the validity of [his] criminal conviction or the duration of his confinement, unless [he] can demonstrate that the conviction or sentence has been previously invalidated." Id., citing Heck v. Humphrey, 513 U.S. 447, 487 (1994). This principle "also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings." Id., citing Edwards v. Balisok, 520 U.S. 641, 646 (1997). Such a policy comports with the general rule that a federal court does not "serve as a reviewing body over the accuracy of disciplinary committees' findings of fact." Woodard v. Mills, No. 74-2088, 511 F.2d 1399 (4th Cir. 1975) (per curiam).

Although plaintiff alleges that defendants wrote false statements and brought false charges against him, he also concedes that he was found guilty of the disciplinary offense. Any finding by this Court that the charges were "false" necessarily would undo the findings of the disciplinary proceedings and would implicate the foregoing principles. As a result, plaintiff's challenge to the disciplinary charge is barred by Heck and its progeny.

7

Moreover, even if plaintiff's challenge to the disciplinary charge were cognizable, it would fail in substance. A bare allegation that a disciplinary charge was "false," such as plaintiff makes here, "does not state a claim that the inmate's rights were violated." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986). Rather, the inmate must allege as well "that he was denied notice and a hearing related to the allegedly false disciplinary charge." Id. Because plaintiff does not allege that he was deprived of notice or a hearing, his due process challenge to the alleged "false" disciplinary charge even if cognizable would fail for lack of merit.

D. Qualified Immunity

To the extent that plaintiff seeks monetary damages, the defendants are entitled to qualified immunity. The "threshold question" in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts show [that] the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., see also, Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002). Because plaintiff has not established a viable claim that his constitutional rights have been violated, defendants are entitled to qualified immunity.

## II. Plaintiff's Proposed Amendments

In reaction to defendants' Motion to Dismiss, plaintiff filed a Motion to Amend and Supplement the amended complaint. [Dkt. No. 28] In addition to reiterating some of the arguments discussed above, plaintiff seeks to add several additional defendants and to assert the following additional claims:

(1) He was denied his procedural due process right to call for and present evidence of his innocence of the alleged sexual assault.

(2) His right to due process was violated when he was falsely charged and convicted

based solely on an unverified statement from an unknown accuser and his nonexistent confession.

(3) He was denied his right to appeal his conviction of a sexual assault he did not commit.

(4) His constitutional and state-created liberty interest rights against having a false allegation and unlawful conviction used against him in civil commitment proceedings were violated.

Fed. R. Civ. P. 15(a) directs that leave of court to amend "shall be given freely when justice so requires." The Supreme Court has elaborated on this standard as follows:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on behalf of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should ... be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962). The Fourth Circuit interprets this directive to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman, 371 U.S. at 182). A pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Dluhos v. Floating & Abandoned Vessel Known as "New York," 162 F.3d 63, 69-70; see also, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), cert. denied, 439 U.S. 970 (1978) (holding that a pro se civil rights plaintiff should be granted leave to amend despite failure to state how he could cure deficiencies). On the other hand, a motion to amend warrants denial where there is "an apparent or declared reason [for doing so] - such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party ... [or] futility of [the] amendment." Dluhos, 162 F.3d at 69, quoting Foman, 371 U.S. at 182. Here, because it would be futile to allow plaintiff to add the proposed amendments, his Motion to Amend and Supplement will be denied.

Plaintiff seeks to name as additional defendants the Wardens of Deerfield and Dillwyn Correctional Centers; Mr. Powell, an Inmate Hearings Officer at Dillwyn; and Jones, the Unit Manager of the Restrictive Housing Unit at Dillwyn. The proposed amended complaint is devoid of any factual allegations as to the basis of plaintiff's intended claims against the wardens, who appear to have been added as parties solely based upon their supervisory positions. Supervisory officials may be held liable only in certain circumstances for the constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Plaintiff does not allege, much less offer any facts to demonstrate that the wardens of Deerfield and Dillwyn had actual or constructive knowledge that subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of

constitutional injury to plaintiff. Under such circumstances, he has stated no claim against either proposed defendant.

As to the two remaining proposed defendants, the proposed amended complaint makes no allegations which, if proven, would entitle plaintiff to relief. In his first claim, plaintiff alleges that proposed defendant Powell, an inmate hearings officer at Dillwyn Correctional Center, denied plaintiff's "demands for evidence such as the security camera footage on the date of the alleged incident, citing that the material was located at another facility...." Plf. Mo. to Amend at 3, 6. Contrary to plaintiff's apparent understanding, an inmate has only a "qualified right 'to call witnesses and present documentary evidence in his defense [at a disciplinary proceeding] when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Brown v. Braxton, 373 F.3d 501, 5o5 (4th Cir. 2004) (quoting Wolff, 418 U.S. at 566). Additionally, prison officials have the discretion to keep the hearing within "reasonable limits," to refuse witness requests, and to limit access to collect statements or to compile other documentary evidence. Wolff, 418 U.S. at 566. Plaintiff admits that the camera footage he allegedly sought was located at another facility, therefore, Officer Powell was acting within his discretion to deny plaintiff's request to obtain it.[3]

Also in the proposed amendments, plaintiff alleges that defendant Jones, the Unit Manager of the Restrictive Housing Unit at Dillwyn, thwarted plaintiff's ability to appeal the disciplinary conviction by not providing plaintiff with an "appeal package" before plaintiff was transferred to another institution. Plf. Mo. to Amend at 3. This allegation, taken as true, states no

---

[3]It is well established that a decision by a disciplinary board satisfies due process if there is "any evidence in the record that could support [its] conclusion," and the decision is to be sustained even if only a "modicum of evidence" is found. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Significant here, plaintiff does not allege that there was no evidence to support the finding he challenges; in fact, his reference to the disciplinary conviction being supported by "an unverified statement from an unknown accuser" indicates that some evidence of his guilt was presented.

11

claim for § 1983 relief, as it is widely recognized that an inmate has no right to appeal a disciplinary board's decision. See, e.g., Platt v. Brockenborough, 476 F. Supp. 467, 469-70 (E.D. Pa. 2007) ("[P]risoners have no constitutional right to appeal the results of a disciplinary proceeding."); Chance v. Compton, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by Wolff."); Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (administrative review of disciplinary hearing not constitutionally required).

Lastly, because plaintiff states no claim that he failed to receive due process at the disciplinary hearing, his allegation that his constitutional rights were violated when that determination was used as the basis to declare him a sexually violent predator also fails. In Mariani v. Stommel, 251 Fed. App'x 536 (10th Cir. 2007), a state inmate alleged in a § 1983 action that he was denied due process when he was classified as a sex offender based on his prison disciplinary conviction. In rejecting that contention, the Tenth Circuit held:

> It is not necessary, however, that this process [required by Wolff] be provided at the classification proceeding if the underlying offense has been established at a prior hearing at which the prisoner was afforded due process. ... So long as a prior prison disciplinary proceeding provided as much process as a prisoner would be entitled to at a classification proceeding, the prisoner has been treated fairly.

Id. at 540. Because the sex offender classification was "an automatic consequence" of the plaintiff's disciplinary conviction, and he had received the process required by Wolff at his disciplinary hearing, "there would be no need for further fact-finding or a plea to official discretion at a classification proceeding," and "[t]he only process due [plaintiff] was notification that he had been classified as a sex offender based on his prior disciplinary conviction." Id. In this case, plaintiff states that he "was taken to a courthouse for his civil commitment whereat the Commonwealth presented [his] prison conviction" of the disciplinary offense. [Dkt. No. 28 at 7]

Plainly, then, he received ample notice that the disciplinary conviction was the basis for his classification as a sex offender, and as a result he fails to state a claim for denial of his right to due process in connection with his sex offender classification.

III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss for failure to state a claim will be granted, plaintiff's Motion to Amend will be denied as futile, and plaintiff's motion for discovery and defendant's request protective order will be denied, as moot. An appropriate Order and judgment shall issue.

Entered this 13th day of June 2017.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge